IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD ALEXANDER, et al., individually and on behalf of all others similarly situated, Plaintiffs, | § | |
| v. | § | No. 3:26-CV-314-X |
| PCA US LLC f/k/a CHRYSLER GROUP LLC and LEAR CORPORATION, Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion to Strike Defendants' Objections to Plaintiffs' Requests for Production and Compel Production of Documents Responsive Thereto filed on September 21, 2026. (Dkt. No. 57 ("Mot.").) The motion seeks to compel the production of documents from both Defendants FCA US LLC ("FCA") and Lear Corporation ("Lear") that are responsive to various requests for production ("RFP"). United States District Judge Brantley Starr referred the motion to the undersigned magistrate judge for a hearing, if necessary, and resolution. (Dkt. No. 59.)

For the reasons that follow, the Court grants the motion in part and denies it in part.

## I. BACKGROUND

Plaintiffs in this putative class action allege that FCA and Lear manufactured, marketed, and sold vehicles that they knew hid a dangerous seat component that rendered the vehicles dangerous in rear-end collisions. (Dkt. No. 42 ("2d Am. Compl.") ¶¶ 3-6.) Specifically, Plaintiffs allege that the front seats in the class vehicles contain an electric seat height adjuster that "collapses in virtually every rear-impact collision at speeds as low as 25 MPH," causing increased risks of injury and death. (*Id.* ¶¶ 4-5.) The putative class is comprised of vehicles manufactured by Dodge and Chrysler in model years from 2011 to 2023. (*See id.* ¶¶ 3-5.) FCA manufactured the vehicles, and Lear is alleged to have designed, tested, and manufactured the seat height adjuster. (*Id.* ¶¶ 29-33, 51.) Plaintiffs assert claims for or arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Texas Deceptive Trade Practices Act, breach of implied warranties under Texas statutory law, fraud, and unjust enrichment.

Plaintiffs filed the instant motion to compel on September 21, 2026. The Court ordered the parties to confer on the disputes underlying the motion and submit a joint report apprising the Court of remaining disputes and the parties' respective arguments and authorities as to each. (Dkt. No. 60.) The parties submitted the joint report on November 2, stating that they have resolved several matters but identifying several remaining disputes requiring Court resolution. (Dkt. No. 76 ("JR").) The parties filed a joint appendix to accompany the joint report. (Dkt. No. 77 ("JA").)

## II. LEGAL STANDARDS AND ANALYSIS

Fed. R. Civ. P. 26 provides for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, and parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A party resisting discovery on grounds or relevance and proportionality must "specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance . . . or fails the required proportionality calculation or is otherwise objectionable." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 585 (N.D. Tex. 2018). When a party objects to discovery as overly broad, unduly burdensome, or oppressive, it must explain how it is so "by submitting affidavits or offering evidence revealing the nature of the burden." *Samsung Elec. America, Inc. v. Yang Kun Chung*, 231 F.R.D. 250, 283 (N.D. Tex. 2017).

As a general rule, a party waives any objections to an interrogatory or request for production not timely stated in its responses. *See id.* at 283-84. And, "[a] party who has objected to a discovery request then must, in response to a Rule 37(a) motion to compel, urge and argue in support of its objection to an interrogatory or request, and, if it does not, in waives the objection." *Id.* at 284.

## A. Defendant FCA US LLC's objections to Requests for Production

**RFP No. 1**: All documents created as part of the Seat Back Strength Project described in Exhibit "A" related to FCA's efforts to:

a. determine performance of contemporary outboard seats in real world crashes and NHTSA compliance testing;

b. analyze National Accident Sampling System (NASS) and the Fatal Accident Reporting System (FARS) statistics and hard copy files, to establish occupant protection performance of the outboard front seats;

c. investigate front seat performance observed in compliance tests for FMVSS 301, Fuel System Integrity, in which a rigid 4,000 pound moving barrier is crashed into the rear of the subject car at 30 mph;

d. develop computer modeling for front outboard seats which will provide analytic means for estimating occupant protection provided by then-current seating systems over the range of occupant sizes, occupant genders, and crash severities in front and rear crashes, including exercising models to investigate means of improving occupant protection;

e. explore potentials for advanced designed of frontal outboard sealing systems to extend occupant protection afforded by these seats to all car crash modes (frontal, rear, side, and rollover);

f. identify from detailed information on occupant protection functions of current front outboard seat systems, deficiencies which may be amenable to improvement by modification of then-current seat designs;

g. evaluate then-current front outboard seating systems through laboratory testing of a representative then-current seat and develop a computer model to allow analytic study of modifications to improve occupant protection to supplement an analysis of accident records focused on front seat occupant protection provided by then-current seats;

h. develop and demonstrate feasibility of an advanced seat concept;

i. complete concept phase of advanced integrated seat work by EASi Engineering and Johnson Controls by September 1, 1996;

j. complete contracting for measurement of ultimate strength of new car seat backs by September 25, 1996; and

k. complete all of the above by October I, 1997 [sic].

RFP No. 1 concerns documents relating to the Seat Back Project, a program at Chrysler in 1996-1997 that considered ways to reduce injuries from seat failures. (*See* JR at 5; JA 14.) FCA represents that it is in the process of producing design, engineering, and testing information for the front seat systems used in the class vehicles. (JR at 17-18.) It contends, however, that the information sought about the Seat Back Project—a program that predated by a decade the design and manufacture of the seating system at issue in this case—is not relevant and is disproportional to the needs of this case. Plaintiffs contend that the requested discovery is relevant to showing that FCA was aware of a need to explore ways to advance designs for seating systems to improve occupant safety and, in particular, of its knowledge of a relationship between performance of the seat height adjuster and safety. (*Id.* at 7.)

In view of the relevance of information sought, the production sought by RFP No. 1 is disproportional to the needs of the case. As noted, FCA is producing extensive information about the design, manufacture, and testing of the seating systems used in the class vehicles. Materials based on a study from the 1990s long before the height adjuster at issue was designed and manufactured has marginal relevance that does not justify collection and production. In support of its argument that producing the requested documents would be overly burdensome, FCA produced declaration from a long-term employee who states that any surviving records from the Seat Back Project would be maintained in offsite archival paper files or in obsolete legacy computer systems. (JA 407.) And those files would not be

indexed by vehicle platform or component, which would increase the amount of time necessary to locate relevant documents. (*See id.*) The burden of finding and producing the requested materials far outweighs their marginal relevance. The Court denies the motion to compel as to RFP No. 1 to FCA.

> **<u>RFP No. 4</u>**: A copy of every document produced by you in *Sherry Reames Vega, Individually and as Executrix of the Estate of Carrie L. Reames v. FCA US LLC, Lear Corporation, and Michelle Peck*, Cause No. CC-23-03079-B, in the County Court at Law No. 2, Dallas County, Texas ("*Reames*").

By this request, Plaintiffs seek all the documents FCR produced in a different lawsuit implicating the seat height adjuster. FCA argues that the RFP is an impermissible request for "clone discovery." (*Id.* at 23.)

"Numerous courts have found that requests for 'all' documents produced in another litigation, so-called 'clone['] or 'copycat' discovery, are inherently overbroad requests requiring the Court to considerably scale back the information that a producing party must produce from another litigation or deny it entirely on the ground that a party must do its own work." *In re Exactech Polyethylene Orthopedic Prods. Liability Litig.*, 347 F.R.D. 572, 583 (E.D.N.Y. 2024) (quoting *United States v. Anthem, Inc.*, No. 20-CV-2593 (ALC)(KHP), 2024 WL 1116276, at *4 (S.D.N.Y. Mar. 13, 2024) (alteration brackets omitted)). Courts generally "grant motions to compel discovery from another case when the requests are narrowly tailored to request discovery from another case that is essentially identical and deny requests to compel discovery from anther case 'merely because there are some similarities

between cases.'" *Id.* (quoting *Sricca v. Bobby Co.*, No. 3:22-CV-01497 (RNC), 2024 WL 1211061, at *6 (D. Conn. Mar. 21, 2024)).

Plaintiffs contend that the prohibition against clone discovery is inapplicable because the cases FCA relies on in opposition involved discovery requests for information from truly unrelated lawsuits. (JR at 21.) They assert that *Reames* concerned the identical adjuster, defect, failure mode, and failure effect as in this case, except that the case was a wrongful death case because the occupant died. (*Id.*) And, they posit, they should not have to go through the process of more specifically identifying each of the same kinds of materials produced in that lawsuit. FCA argues that the claims were different in *Reames*, with different elements and standards. (JR at 24.)

Judge Kacsmaryk's decision in *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 2:23-CV-155-Z, 2024 WL 5048013 (N.D. Tex. Dec. 9, 2024), undermines Plaintiffs' argument that the lawsuits are sufficiently similar to allow clone discovery. There, plaintiffs sought materials produced in prior cases involving claims the court described as "near-identical." *Id.* at *4. Even so, plaintiffs' request for "all" documents produced in the prior lawsuits was rejected as impermissible clone discovery that would "constitute an undue burden on [the producing party and] also sweep in a wide swatch of irrelevant documents." *Id.* at *5. Just the same, Plaintiffs' request for all documents produced in *Reames* will undoubtedly include relevant materials, but that does not justify compelling FCA to reproduce that

production en toto. Rather, plaintiffs "must make proper requests describing the information in which they are interested." *Id.* (quoting *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. IP99-0690-C-Y/G, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000)). That is so "[e]ven when the litigation may be expedited by duplicative discovery." *Id.*

Plaintiffs' motion to compel is denied as to RFP No. 4.

> **<u>RFP No. 5</u>**: A complete copy of the following depositions taken in *Reames*, together with exhibits:
> a. Butler, Michael (2024-09-26)
> b. Butler, Michael (2024-12-19)
> c. Kaye, Matthew (2024-09-25)
> d. Shea, Paul Henry (2024-08-21)
> e. Shea, Paul Henry (2024-09-18)

RFP No. 5 seeks the transcripts (and exhibits) of depositions given by three engineers in *Reames*. Plaintiffs argue that two of the witnesses were involved in the design and approval of the seat height adjuster, and the third is a Senior Specialist with 27 years of experience in the design and development of seat systems at FCA or its predecessor entities. (JR at 27.) They aver that these witnesses testified about the same seat height adjuster, defect, failure mode, and failure effect that is relevant in this lawsuit. (*Id.*) FCA defends against this request on the same grounds as RFP No. 4—that it is impermissible clone discovery and that identifying the particular witness and date of deposition does not adequately tailor "that testimony" to the claims and defenses in this case. FCA asserts that, if Plaintiffs believe these

witnesses have relevant information for this case, they can seek their depositions in this case.

The Court overrules FCA's objections as to RFP No. 5. Unlike the prior request seeking "all documents" produced, Plaintiff's request for the identified deposition transcripts and incorporated exhibits are sufficiently narrow. *See Open Cheer*, 2024 WL 5048013, at *4 (overruling objections to production of expert reports created in prior litigation). Although some of the questions and answers in the prior depositions were specific to the fact and claims in that action, the witnesses' testimony concerning the design and development of the same components at issue in this lawsuit are undoubtedly relevant in this action. And the burden of producing these five deposition transcripts and accompanying exhibits is minimal, particularly compared to a wholesale recreation and production of all materials produced in that litigation.

Plaintiff's motion is granted as to RFP No. 5.

> **RFP No. 10**: All "Conjoint Analysis," "Willingness to Pay," or consumer research studies conducted by or for You regarding the value consumers place on the security features, safety, or crashworthiness of each Class Vehicle model.

> **RFP No. 21**: All communications with Marketing Agencies (including GSD&M, Omni Advertising, and Doner) regarding the advertising of "safety," "occupant protection," or "5-star safety ratings" for the Class Vehicles.

RFP Nos. 10 and 21 relate to research studies into the value consumers placed on safety and security features of the class vehicles and advertising about the safety of

the vehicles. Plaintiffs have agreed to narrow RFP No. 10, including by adding a 14-year temporal scope (Jan. 1, 2010 to Dec. 31, 2023). Plaintiffs argue that the information is relevant to their claims that Defendants falsely advertised the class vehicles as safe although they knew "they were vulnerable to deformation during rear impact collisions." (JR at 30-31 (quoting Am. Compl. ¶ 80).) FCA asserts that the requested materials generally about consumer values are irrelevant to whether the seat height adjuster was defective, whether FCA knew of any defect, or whether any alleged omission that particular component was material to any purchaser. (*Id.* at 29-30, 31-32.) FCA also objects to the requests as overbroad to the extent they seek every communication or sweep in everything relating to "security features" or "safety" that would include crash-avoidance technologies, lighting, anti-theft features, and such. (*Id.* at 29.)

The requested information is relevant to Plaintiffs' allegations that FCA marketed the cars to consumers as safe despite knowing that the seat height adjuster failed in rear-end impacts. (*See* Am. Compl. ¶¶ 72-87.) And FCA's naked assertion that having to produce the responsive discovery would be burdensome does not establish a basis to disallow it. *See Samsung*, 231 F.R.D. at 283. Even so, the Court agrees that, by including "safety" generally or "security," the requests are broader than necessary to capture the relevant documents and communications. The defect at issue concerns the crashworthiness of the class vehicles, as differentiated by anti-theft or crash avoidance features.

The Court grants Plaintiff's motion in part with respect to RFP Nos. 10 and 21. In response to RFP No. 10, FCA must produce all consumer research studies conducted by for your You regarding the value consumers place on the crashworthiness of any class vehicle for the period January 1, 2010 to December 31, 2023. As to RFP No. 21, FCA must produce all communications with Marketing Agencies regarding public advertisement of a Class Vehicle on the basis of crashworthiness.

> **RFP No. 22**: A copy of the complete last version of the Joint Specifications for Passive Safety ("JSPS").
>
> **RFP No. 24**: A copy of all documents dated after May 7, 1998, which regard, discuss, or pertain to any JSPS content related to seats, seatbelts, or maintaining occupant position in a crash.
>
> **RFP No. 25**: Documents sufficient to prove that the JSPS was not applicable to the front seats in Carrie Reames's 2014 Dodge Charger.
>
> **RFP No. 26**: Documents sufficient to determine when JSPS was, if ever, eliminated or abandoned, and the last Model Year and Vehicle Model to which it was applicable. If the JSPS was eliminated or abandoned in phases, please answer this request for the JSPS standards and specifications for the performance of front seats.
>
> **RFP No. 27**: Documents regarding, discussing, or pertaining in any way to elimination of JSPS.

These RFPs seek information about the Joint Specifications for Passive Safety ("JSPS"). FCA describes the JSPS as a program developed in the early 2000s that included chapters on frontal impacts, rear impacts, side impacts, and rollover/roof strength. (JR at 34.) It states that the JSPS was discontinued in 2007 and was not applicable to class vehicles in model years 2011 through 2023. (*Id.*) FCA

acknowledges that some JSPS standards may have been incorporated into the performance and engineering standards that applied to seat systems in the class vehicles, and FCA has agreed that it will be producing the source package and engineering standards for those vehicles. (JR at 34-35.) Plaintiff's contend that the JSPS documents "further establish the safety defect at issue." (JR at 33.) Specifically, they argue that the relevant seat systems were required to comply with JSPS and an FCA internal standard for rear impact.

As FCA asserts, the engineering package that controlled the design and manufacture of seat systems in the class vehicles is most directly relevant to the claims and defenses in this case. Although the JSPS did not set those standards, it appears to have contributed to them in a way that might inform Plaintiffs concerning the development of engineering standards for seat systems in rear-impact collisions. FCA does not contend that production of the final JSPS as it relates to read-impact collisions is overly burdensome. The Court grants Plaintiff's motion as to RFP No. 22 with respect to any chapter or other portion that concerns rear impacts.

The Court denies Plaintiff's motion as to RFP Nos. 24 through 27. Plaintiffs' request for "all documents" from the past 28 years that discuss or pertain to "JSPS content related to seats, seatbelts, or maintaining occupant position in a crash" is overbroad and reaches well beyond documents that might be relevant in this lawsuit. And Plaintiff's request for documents "sufficient to prove that the JSPS was not applicable to the front seats in Carrie Reames's 2014 Dodge Charger" is problematic

in that it seemingly imposes on FCA a requirement to determine what Plaintiffs deem sufficient to prove a fact, which could be especially onerous if the proof is a negative implication that is drawn from an absence of any fact in voluminous materials. And where FCA has affirmatively represented that JSPS was discontinued in 2007, Plaintiffs have not explained the continuing need for documents sufficient to determine when it was terminated or the last vehicles to which it applied or documents "regarding, discussing, or pertaining in any way" to its termination.

Plaintiff's motion is granted as to RFP No. 22 as explained above, and it is denied as to RFP Nos. 24 to 27.

> **RFP No. 41**: Documents describing the role of the Manual Seat Height Adjuster in "managing energy."

> **RFP No. 42**: Documents setting forth the performance characteristics of the Manual Seat Height Adjuster that "manage energy."

RFP Nos. 41 and 42 seek documents pertaining to the *manual* seat height adjuster in managing energy in collisions. Plaintiffs expect that FCA will defend this case by arguing that the electric seat height adjuster was intended to collapse in a rear-end collision in order to manage energy and thus reduce the risk of injury or death. (JR at 38.) That is, Plaintiffs expect that Defendants will argue that failure of the adjuster was a safety feature, not a defect. Assuming this defense to be in play, Plaintiffs argue it is fair to ask whether FCA manufactured the manual seat height adjuster with the same feature.

FCA takes exception to Plaintiffs' characterization of FCA's anticipated defense and argues that the discovery sought is irrelevant and not proportional because it concerns vehicles specifically excluded from the class. (JA 38-39.) The Court agrees that the discovery sought is not proportional to the needs of this case. Plaintiffs' claims concern the electric seat height adjuster in the class vehicles and whether it manifested a feature rendering the class vehicles dangerous. The discovery sought broadly implicates seating systems from a seemingly unlimited array of vehicles—none of which can be in the class—and reaches too far afield from the issues for this case for the Court to require their production.

Plaintiffs' motion is denied as to RFP Nos. 41 and 42.

**B. Defendant Lear Corporation's objections to Requests for Production**

Plaintiffs and Lear state that, after conferring, they have disputes concerning 21 RFPs. (JR at 40.) As a preliminary matter, the Court addresses Lear's assertion that an order compelling production would not be appropriate if the Court overrules its objections presented in the joint report because Lear asserted additional objections to the requested discovery about which the parties did not confer—because Plaintiffs did not raise them, according to Lear—or address them in the joint report. (*See* JR at 44-45, 47.) "A party who has objected to a discovery request must, in response to a motion to compel, urge and argue in support of [its] objection to a request, and, if [it] does not, [it] waives the objection." *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 434 (N.D. Tex. 2016). The Court directed the parties to confer on all the matters raised

in the motion to compel, and it was clear that the joint report replaced the usual response and reply so the Court could resolve the outstanding discovery disputes. The Court rejects any argument Lear might be making that overruling its objections to discovery made in the joint report should then prompt another round of attorney conference and briefing on other objections Lear believes it is holding in reserve for another wave of disputes if the objections it advances now are overruled. To the extent Lear has chosen not to confer about or present objections to the requested discovery in response to the motion to compel, those objections are waived. *Cf. Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 508 (N.D. Tex. 2016).[1]

> **RFP No. 2**: All Documents produced in Sherry Reames Vega, Individually and as Executrix of the Estate of Carrie L. Reames v. FCA US LLC, Lear Corporation, and Michelle Peck, Cause No. CC-23-03079-B, in the County Court at law No. 2, Dallas County Texas ("Reames").
>
> **RFP No. 3**: A complete copy of the following depositions, together with exhibits, taken in *Reames*. This request is directed to the Defendant who tendered the witness.
>
> a. Harvey, Jeff (2024-12-17)
> b. Sweeting, Douglas (2024-08-22)
> c. Sweeting, Douglas (2024-12-17)
> d. Sweeting, Douglas (2024-12-18)

Lear states that it intends to produce all the documents it produced in *Reames* concerning the putative class vehicles, but it objects to producing "all" discovery in

[1] The Court understands Lear's statement, with respect to some of the issues, that Plaintiffs' late inclusion of arguments in the joint report interfered with its ability to respond in the joint report. (*See* JR at 47.) Such circumstances could justify a request to extend the report deadline to confer and respond to the new argument.

the *Reames* lawsuit. (JR at 44-45.) Plaintiff states that Lear has also agreed to produce the requested deposition transcripts and exhibits except that it plans to redact any information about vehicles other than putative class vehicles. (*Id.* at 40 n.7.) The Court sustains Lear's objection to clone discovery the same extent and for the same reasons. Plaintiff's motion is denied as to RFP No. 2. With respect to RFP No. 3, the issue is whether Lear must produce the portions of the depositions concerning vehicles that are not among the vehicles included in the putative class (and accompanying exhibits). Although testimony about seats or vehicles beyond those within the putative class might bear far less relevance in this action, it is not so devoid of relevance that its inclusion in transcripts that are being produced is disproportional or overly burdensome. Plaintiff's motion is granted as to RFP No. 3.

> **RFP No. 7**: Documents sufficient to determine the number of Seats equipped with the Power Seat Height Adjuster, broken down by Model Year and Model, including the price for which each such Seat was sold.

> **RFP No. 8**: Documents sufficient to determine the number of Seats equipped with the Manual Seat Height Adjuster, broken down by Model Year and Model, including the price for which each Seat was sold.

Plaintiffs assert that information about the number of seats equipped with the seat height adjuster and sold during the class period "is directly probative on the issue of continuity (RICO) and scope of the misconduct alleged, as well as Lear's motivation in going along with the scheme[.]" (JR at 49.) But they do not explain why the numbers and pricing for seats equipped with manual seat height adjusters are probative, much less sufficiently probative to justify the costs associated with

finding and producing the information. And as to Plaintiffs' request for documents pertaining to the sales of seats with power adjusters, Lear asserts that Plaintiffs can get the numbers of seats actually sold to consumers from the list of putative class vehicles produced by FCA. (*Id.*) Additionally, Lear argues that the information is not relevant to Plaintiffs' continuity element for a RICO claim because their allegations rest on the length of time during which the alleged scheme occurred rather than the number of seats involved. (*Id.* (citing 2d Am. Compl. ¶ 133).) The Court sustains Lear's objections and denies Plaintiff's motion as to RFP Nos. 7 and 8.

> **RFP No. 4**: To the extent not produced in response to another Request for Production, all Documents regarding discussing, or pertaining in any way to each test in which a rearward longitudinal force was applied to any part of the Seat with the Seat at its highest adjusted position.
>
> **RFP No. 5**: To the extent not produced in response to another Request for Production, all Documents regarding, discussing, or pertaining in any way to each test in which a rearward longitudinal force was applied to any part of the Seat with the Seat in other than its highest adjusted position.
>
> **RFP No. 6**: To the extent not produced in response to another Request for Production, all Documents regarding, discussing, or pertaining in any way to each test conducted on the Seat using the test methodology specified by Federal Motor Vehicle Safety Standard 202a.
>
> **RFP No. 9**: All Documents regarding, discussing, or pertaining in any way to the design of the Bracket and every iteration thereof.
>
> **RFP No. 10**: All Documents regarding, discussing, or pertaining in any way to the testing of the Bracket and every iteration thereof.
>
> **RFP No. 11**: All Documents regarding, discussing, or pertaining in any way to the performance of the Bracket and every iteration thereof.

**RFP No. 12**: All Documents regarding, discussing, or pertaining in any way to the failure (including bending) of the Bracket and every iteration thereof.

**RFP No. 13**: All Documents regarding, discussing, or pertaining in any way to any alternative to the Bracket and every iteration thereof considered by You for installation in the Power Seat Height Adjuster.

**RFP No. 18**: All Documents related to any power seat height adjuster, other than the Power Seat Height Adjuster, considered for use in the Seat.

**RFP No. 19**: All Documents related to any bracket, other than the Bracket, considered for use in the Power Seat Height Adjuster.

**RFP No. 20**: All Documents related to any lead screw, other than the Lead Screw, considered for use in the Power Seat Height Adjuster.

**RFP No. 21**: To the extent not produced in response to another Request for Production, all Documents regarding, discussing, or pertaining in any way to the Power Seat Height Adjuster, including any component and iteration thereof. Your production is to include every Document related to alternative components considered, e.g., lead screw, bracket, gear box, etc.

**RFP No. 22**: To the extent not produced in response to another Request for Production, all Documents regarding, discussing, or pertaining in any way to the Manual Seat Height Adjuster, including any component and iteration thereof. Your production is to include every Document related to alternative components considered, e.g., lead screw, bracket, gear box, etc.

**RFP No. 24**: To the extent not produced in response to another Request for Production, all Documents sent to or received from any person regarding, discussing, or pertaining in any way to the Power Seat Height Adjuster, including any component and iteration thereof.

**RFP No. 25**: To the extent not produced in response to another Request for Production, all Documents sent to or received from any person regarding, discussing, or pertaining in any way to the Manual Seat Height Adjuster, including any component and iteration thereof.

**RFP No. 26**: Documents describing the role of the Manual Seat Height Adjuster in “managing energy.”

**RFP No. 29**: Documents describing the role of the Manual Seat Height Adjuster in “managing energy.”

**RFP No. 30**: Documents setting forth the performance requirements of the Manual Seat Height Adjuster in "managing energy."

**RFP No. 31**: All Documents regarding, discussing, or pertaining in any way to testing intended to measure, or which did measure, the performance of the Manual Seat Height Adjuster in "managing energy."

**RFP No. 33**: If you manufactured front seats installed in any year model Dodge Charger Pursuit, documents sufficient to determine the difference(s), if any, between every manual seat height adjuster and power seat height adjuster in the Dodge Charger Pursuit and the Manual Seat Height Adjuster and Power Seat Height Adjuster in Class Vehicles.

**RFP No. 34**: All rear-impact sled tests for any manual seat height adjuster installed in any 2011-2023 Dodge Charger Pursuit.

The parties describe their disputes on the remaining RFPs as concerning the following matters: (1) requests for information about vehicles that are not within the purported class and (2) requests for information about manual seat height adjusters. For the same reasons provided above as to FCA, the Court concludes that any relevance of the requested materials does not justify the burdens of the discovery concerning vehicles beyond those within the putative class, which would include vehicles with manual height seat adjusters.

The Court sustains Lear's objections discussed above to RFP Nos. 4, 5, 6, 9, 10, 11, 12, 13, 18, 19, 20, 21, 22, 24, 25, 26, 29, 30, 31, 33, and 34.

## III. CONCLUSION

Plaintiff's motion to compel (Dkt. No. 57) is **GRANTED** in part and **DENIED** in part as explained above. Absent agreement of the parties to a different deadline, Defendants are ordered to produce responsive documents as soon as reasonably practicable, and in any event no later 45 days from the date of this order.

**SO ORDERED** on November 23, 2026.

BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE